## STEWART *v.* STEWART.

1. DIVORCE—EXTREME CRUELTY—EVIDENCE.

Extreme cruelty on part of defendant husband, a dentist, *held,* shown by evidence that he required plaintiff to perform arduous duties at the office under disagreeable conditions and for unreasonably long hours which led to the impairment of plaintiff's health.

2. SAME—PROPERTY SETTLEMENT.

Property settlement in decree of divorce whereby childless marriage between 23-year-old woman and 59-year-old man was terminated after duration of less than 6 years *held,* equitable under testimony presented, where he was relieved of payment of alimony, the settlement gave the wife an undivided half interest in one piece of property, terminated her dower rights in all other property, gave defendant sole ownership in all the remainder of his property and in certain diamond rings in plaintiff's possession, and an option to pay plaintiff $16,000 for her interest in the property held as tenants in common.

3. SAME—PROPERTY SETTLEMENT—PREVIOUS PROPERTY SETTLEMENT INCIDENT TO RECONCILIATION.

A property settlement entered into between parties to a suit for divorce, incident to a reconciliation, did not prevent trial court in a subsequent divorce proceeding from effecting a different settlement, where the first settlement resulted from a misrepresentation by the husband as to the value of consideration he furnished and his subsequent conduct was in direct violation of plaintiff's understanding as to her resumption of strenuous office duties which had been a major cause of the domestic troubles between them.

4. SAME—RECONCILIATION.

Defendant husband who breached one reconciliation agreement was not in a position thereafter to insist upon further attempt at reconciliation instead of having divorce granted wife.

5. SAME—PROPERTY SETTLEMENT—STATUTES.

The trial court in divorce cases is vested with authority by statute to make an equitable adjustment of the property rights of

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Divorce and Separation, § 52.
[2, 3, 5] 17 Am Jur, Divorce and Separation, § 445.
[7] 17 Am Jur, Divorce and Separation, § 197.

the parties in lieu of dower rights, incident to granting a divorce (CL 1948, § 552.101).

6. SAME—RECONCILIATION—TESTIMONY OF PREVIOUS MARITAL RELATIONS.

Testimony as to matters affecting the marital relations of the parties prior to a reconciliation was not improperly taken, where defendant husband had disregarded the conditions of the reconciliation.

7. SAME—CONDONATION—BREACH OF CONDITION REVIVES RIGHT TO DIVORCE.

Condonation, especially the implied, is upon the condition both that the offense shall not be repeated, and likewise that continually afterward the party forgiven shall treat the other with conjugal kindness; whereupon a breach of the condition revives the original right of divorce.

8. SAME—REMAND—GRANTING FURTHER TIME.

Upon affirmance of decree of trial court granting and limiting time within which various provisions may be complied with, remand is made with right accorded trial court to grant further time within which the parties may comply where the time limit has already expired.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted October 3, 1950. (Docket No. 1, Calendar No. 44,768.) Decided December 5, 1950.

Bill by Lela B. Stewart against R. Kirk Stewart for divorce on ground of extreme and repeated cruelty. Decree for plaintiff. Defendant appeals. Affirmed.

*Jasper Malkoun* (*Louis Rosenzweig,* of counsel), for plaintiff.

*J. Gilbert Quail* (*Roy F. Andes,* of counsel), for defendant.

NORTH, J. In this divorce case, after hearing on the merits, plaintiff wife was decreed a divorce from the bonds of matrimony and an adjustment of prop-

erty rights. Defendant has appealed. In substance defendant's contention is that the testimony was not "sufficient to form the basis for the equitable relief" granted plaintiff, either as to the divorce or the property adjustment decreed.

Plaintiff and defendant were married in Detroit, September 6, 1941, and have continued their residence in that city. At the time of the marriage plaintiff was approximately 23 years of age and defendant approximately 59. No children were born of the marriage. Final separation occurred on Easter Sunday, 1947, at which time plaintiff left the home of the parties. She filed her present bill of complaint in June, 1947. A former suit for divorce started by plaintiff in June, 1946, was discontinued in consequence of a reconciliation between the parties in August, 1946. Defendant is a dentist. For approximately 2½ years prior to the marriage plaintiff was employed as an assistant in defendant's office. She continued in that capacity during substantially all of the period that the parties lived together. At the time of the marriage she was receiving $20 per week, but her compensation was subsequently increased so that at the time of the separation defendant was paying plaintiff $50 per week. Plaintiff testified: "I didn't have to take care of the household at all because his mother managed the home. He paid his mother room and board for he and I. Dr. Stewart did not buy any of my clothes. I purchased my clothes out of my salary, that's what I had to use my salary for."

The ground upon which plaintiff sought and was granted divorce was extreme and repeated cruelty. According to her testimony these parties almost continually, at least very frequently, quarreled with each other. These quarrels arose in consequence of the defendant's remarks and general attitude by which he belittled plaintiff and her family, in effect

saying that her parents were just "of riff-raff type."
Plaintiff also testified that quarrels arose between
the parties in consequence of the defendant insisting
that plaintiff work unusual and unreasonably long
hours at the office. And plaintiff contends that as a
result of her arduous tasks at defendant's office her
physical welfare was greatly impaired. She admits
that at times there were physical encounters between
these parties, but explains her conduct in that par-
ticular by saying that the unkind attitude and nag-
ging of her husband irritated her beyond the point
of self-control. Plaintiff does not seriously contro-
vert defendant's charge that about 2 months after
the August, 1946, reconciliation, plaintiff, while at
home "ill with the flu" with a 103-degree tempera-
ture, became intoxicated from the use of whiskey
that was in the household, and that while so intoxi-
cated she assaulted defendant and injured him by
throwing and striking him in the face with a water
glass. Plaintiff's testimony was that she was in
such a condition that she did not "have a true
recollection" of what did happen on the occasion
just above noted. It was at this time plaintiff left
defendant and went to the home of her parents.

On the other hand, there is testimony in the record
of earlier assaults of defendant on plaintiff, on one
occasion striking her in the face which resulted in a
broken nose. In the main plaintiff's charges of acts
of extreme and repeated cruelty on the part of de-
fendant are denied by him.

Except as there are references herein to certain
phases of the testimony, no profitable result would
be obtained from a detailed review of the charges
made by the respective parties. In the testimony
there is such a marked degree of conflict that there
was left a large margin for the trial judge to pass
upon the credibility of the respective witnesses; and
the trial judge had a much better opportunity to

function in that capacity than this Court has. We think it is a fair inference that wherein there was material conflict the trial judge placed more credence in the testimony in behalf of plaintiff than that in behalf of defendant.

Our review of this record brings the conclusion that the fundamental cause of the wrecking of the marriage relation between these litigants was defendant's insistence that plaintiff work as an employee in his office, and in that connection imposed upon her arduous duties, including working under disagreeable conditions and for unreasonably long hours, which led to the impairment of plaintiff's health, who at certain times was under a doctor's care. On this phase of the record plaintiff's testimony in part is as follows:

"*Q.* Now, at the time or shortly prior to the reconciliation, while talking to Dr. Stewart about the reconciliation, did you talk to him about your working in the office?

"*A.* Yes, I was promised definitely by Dr. Stewart that I would not have to return to the office, that he wanted me to be in the home; that he had 2 girls that were working for him and he was satisfied with their work and he didn't want me to come into the office unless there should be a very definite emergency."

To the contrary defendant testified:

"*Q.* And as part of that reconciliation didn't you tell her that she wouldn't have to go back to the office?

"*A.* No, sir. I told Mrs. Stewart, on our way up north, that she would come back to the office after we came back from our vacation. We planned that on the way north and talked about it on the way back. * * * She never complained about the work in the office."

Incident to the August, 1946, reconciliation between these parties they signed what purported to be

an agreement adjusting their respective property rights. Concerning this agreement plaintiff testified:

"Dr. Stewart told me that he wanted to have a little agreement drawn up between the two of us where we wouldn't separate any more  *  *  *  so that we wouldn't have any more of these separations and there wouldn't be a divorce started again."

The agreement was prepared by defendant's attorney, and later signed in the attorney's office. The following is from the prefatory recital in the instrument:

"Whereas the parties hereto, being husband and wife, have had differences and misunderstandings which have culminated in a divorce action being instituted by the wife against the husband  *  *  * and Whereas the parties wish to become reconciled and desire to adjust their property rights and make an amicable settlement thereof and resume the marital relationship;  *  *  *  it is mutually agreed as follows."

By the terms of the agreement, in consideration of the defendant giving to plaintiff a diamond ring represented in the agreement to be of the value of $3,000, but later by appraisal shown to be of much less value—approximately $1,500 or $1,800, plaintiff released any and all her rights, including dower rights, in defendant's property "whether the same be heretofore or hereafter acquired." In addition to giving plaintiff the diamond ring, defendant also agreed to do that which he was already legally bound to do—*i.e.,* "to support his said wife properly  *  *  *  as long as she lives with him as his wife." At the time of executing the property settlement defendant was possessed of properties of substantial value, the details of which will be more particularly noted later herein. The record concerning the property

settlement is such that we think, as also did the trial judge, if it was not fraudulent as against plaintiff's rights, it at least was decidedly overreaching as to her interests; and is quite indicative of defendant's attitude toward his wife.   Defendant testified:

"I did not tell her (prior to the execution of the property agreement) that she was to sign off all her rights in my property.   I told her the agreement that was to be signed was to be that she was to relinquish her rights * * * just on the Dexter boulevard property.  * * *  I first discussed it with Lela at our home and we thought if we had an agreement to preserve our marriage, that kind of an agreement would help to preserve our marriage and keep us from having any more divorces or any kind of domestic trouble."

While it was not mentioned in the agreement as drafted and executed, the testimony is to the effect that the defendant simultaneously with entering into the agreement promised that he would make a will leaving all of his property to plaintiff in event of his predeceasing her; and the record is to the effect that defendant did make such a will, which had not been revoked or destroyed at the time of the trial of the case.

On this appeal defendant has taken the position that because there was adequate consideration for the property agreement it was still binding upon plaintiff; that the trial court could not set it aside; and therefore the disposition of property rights decreed by the trial judge could not be sustained.

A careful review of the record brings the same conclusion as that reached by the trial judge as to the divorce issue.   Under all the circumstances disclosed by this record, notwithstanding plaintiff may at times have indulged in conduct which can hardly be approved, we think she established her right to

a decree of divorce on the grounds of extreme and repeated cruelty.

As bearing upon the equity of the property settlement decreed by the trial judge, the record discloses the following. Many years prior to the marriage of these parties defendant had acquired a large tract of land. Including 40 acres purchased after the marriage of these parties, defendant owned approximately 320 acres of land in Mackinac county, Michigan, about 6½ miles from St. Ignace. The testimony as to the value of this property varied widely. Plaintiff testified that defendant told her "he felt that the value of his property was $125,000 or $150,000 or $175,000." It seems fairly certain the actual value is much less than the figures just noted. Defendant testified that at a time when he and plaintiff, after their reconciliation, considered disposing of this northern Michigan property: "We thought maybe we could get $75,000, $85,000, but it wasn't salable at that. I have no value on the property particularly because it isn't salable and I have no offers and it is an abandoned farm at the present time." There is other testimony from which it might well be inferred that the fair market value of the northern Michigan property was not in excess of $10,000. Besides some farm buildings of the ordinary type, there is a lodge on this property. Cecil Smith, who was the treasurer of the township in which the property is located, and who was employed by defendant as the caretaker of the property, testified that the value of "the lodge itself without the barn" would be $15,000. In 1946, this real estate was assessed at a valuation of $3,925.

Defendant is also the owner of a one-half interest in residential property on Dexter boulevard, in the city of Detroit. He made this purchase about the time these parties were married, the total purchase price being $9,500. At the time of the trial the prop-

erty was subject to a mortgage on which there was an unpaid balance of $5,557.27. It is stated in defendant's brief that: "The Dexter avenue property * * * [is] worth $13,000." In addition to the above defendant is the owner of an automobile, household effects and furnishings, and incident to his profession as a dentist has a substantial income. For each of the years 1946, 1947 and 1948, his average net income, as disclosed by his income tax returns, was substantially $5,000. In 1945 and 1946, defendant's gross income was between $24,000 and $25,000.

As to property rights, the decree entered in the circuit court vested in defendant sole ownership of all of his property, including certain diamond rings in the possesion of plaintiff, with the exception that it decreed to plaintiff a one-half interest as tenant in common with defendant in the Mackinac county property. By the decree all of plaintiff's dower rights, present or prospective, were terminated, and defendant was released from payment of all alimony. As against the rights of defendant, it cannot be said that the disposition of the property rights made by the trial judge was inequitable.

Incident to the decreed tenancy in common, the decree provided that in lieu thereof defendant might pay plaintiff $16,000 within a limited time after decree. Defendant now contends that the amount as decreed was too large and "has no support of any kind on this record." Since this provision was no more than an option afforded defendant, he has no meritorious ground for complaint. He could exercise it or not as he chose. And further, partition proceedings are available to either party.

We are not in accord with defendant's contention that since the property settlement incident to reconciliation was entered into by plaintiff for a valuable consideration, the trial court was without power to

set the agreement aside or to include in the decree an adjustment of property rights which was not in accord with the property settlement. In the instant case there was not only misrepresentation, later discovered by plaintiff, as to the value of the diamond ring given to her and now asserted by defendant as constituting in part consideration for the settlement agreement; but under plaintiff's testimony, in direct conflict with the understanding had between the parties, she was required to resume the same strenuous office duties which in the first instance were at least a major cause of the domestic troubles between plaintiff and defendant. In that respect the instant case differs materially from *Jobb* v. *Jobb,* 199 Mich 555, relied upon in defendant's brief. In that case it was noted:

"There is no charge in the present bill that the acts of personal violence have been repeated, nor is there any other act of cruelty alleged since that time which would revive her right to count and rely upon the charges in her first bill. In view of this the condonation would appear to be a complete defense. *Eistedt* v. *Eistedt,* 187 Mich 371."

In the instant case it was rather strange that in the agreement as to property made incident to the reconciliation, no mention was made of defendant's promise to make plaintiff his sole testamentary beneficiary. And as just above noted, there was misrepresentation as to the value of property given by defendant to plaintiff at the time. And more important, defendant subsequent to the reconciliation, in violation of their mutual understanding, insisted upon plaintiff resuming work at his office, which, according to plaintiff's testimony, impaired her health and resulted in domestic turmoil. Under such circumstances defendant is in no position to

insist upon a further reconciliation, instead of plaintiff being granted a divorce. The trial court in divorce cases is vested with authority by statute to make an equitable adjustment of the property rights of the parties in lieu of dower rights, as was done in the instant case, incident to granting a divorce. See CL 1948, § 552.101 (Stat Ann 1949 Cum Supp § 25.131). Also, *Belting* v. *Wayne Circuit Judge,* 245 Mich 111.

Further, in view of defendant's subsequent disregard of the conditions of the reconciliation, it was not improper for the trial court to take testimony as to matters affecting the marital relations of the parties which occurred prior to the reconciliation.

" 'All condonation, especially the implied, is upon the condition both that the offense shall not be repeated, and likewise that continually afterward the party forgiven shall treat the other with conjugal kindness; whereupon a breach of the condition revives the original right of divorce.' 2 Bishop, Marriage, Divorce & Separation, §§ 308, 309, and notes." *Creech* v. *Creech,* 126 Mich 267.

"The grounds for divorce in a former suit by plaintiff, which was discontinued, where reconciliation and condonation followed a property settlement, were revived by a breach of the conditions of the condonation by defendant." *Power* v. *Power* (syllabus), 217 Mich 597.

Other issues presented in defendant's brief have been considered but found to be without sufficient merit to constitute grounds for reversing or modifying the decree entered in the circuit court. The decree as entered in the circuit court is affirmed, but with the right of the trial judge to modify the decree by granting further time within which each of the parties may comply with various provisions therein

as to which the time limit has already expired. Appellee may have costs of this appeal.

BOYLES, C. J., and REID, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.